I would like to reserve two minutes, if I may, for rebuttal. I would like to confine my comments to the IEC claim in this case, specifically the failure to investigate. Counsel's decision not to conduct any investigation into appellant's background and mental state when proceeding on the theory of imperfect self-defense we believe was demonstrably unreasonable in this case. The State Court's decision in finding error was based on an unreasonable determination of the facts and an objectively unreasonable application of the Strickland standard. There were two ways in which the Strickland standard was applied in an unreasonably unreasonable manner. The State Court held that, quote, an obligation, that is, to investigate would only have arisen if facts were known to counsel from which he reasonably should have suspected that a meritorious mental defense existed. The Federal Court echoed this assessment, saying that, by the way, that's at Excerpts of Record, page 74. The Federal Court echoed this assessment, stating, quote, there was sparse indication in the record that counsel was aware Petitioner suffered from a mental other than the fact that he was dyslexic and smoked marijuana. However, neither of these raises the possibility of a strong defense. That's Excerpts of Record 95. However, Federal law does not require, as the State Court held, we believe, that counsel be aware or otherwise suspect that a meritorious mental defense exists, or, as the district court held, that he be aware that the defendant suffers from a mental disease before investigation becomes necessary under Strickland. Roberts. Let me see if I understand. The problem is that he failed to explore the psychological background. And the basis of this is that the counsel knew that he participated in marijuana smoking to some extent, whatever extent he did, and he had dyslexia, which is a learning difficulty. Now, how does that play out into having a psychological background? A learning disability is ordinarily considered a psychological background, and I suppose it's not a rare occurrence when a person charged with a crime such as this has smoked marijuana. How does that tip off the lawyer that he should go into the psychological background? Okay. Well, there are two things that I think a lawyer needs to look at, and I think this comes under the ABA rule. This is 4.4-4.1. There are two things. Number one, you look at the defendant himself, and you mentioned a couple of factors there, and it wasn't just that Deshaun Nellam smoked marijuana. He smoked marijuana on a regular basis. Okay. He had dyslexia, which is a learning disability. Then there are facts of the offense, that Deshaun Nellam, for no apparent reason, shot somebody in a brawl in which he was not a participant from ten feet away for no reason. And he confessed to the police and said, I don't know why he did this. He told the jury the same thing at trial. I don't know why I shot him. I swear to God, I can't explain. His attorney put him on the stand, essentially, in my view, let Deshaun Nellam try to explain what he could not explain. So going back to the Court's question here, and it --- which was the fact that his apparent deception initially was not investigated as part of it. So putting all these -- putting all of this together as, you know, in this calculus, I don't believe that we're Monday morning quarterbacking here. I think that the defense attorney was on notice that there's something wrong with Deshaun Nellam. And that something wrong has to do with marijuana and dyslexia? I believe that that's part of it, but that's not the only thing. When we're looking at the ---- Has he shot people for no apparent reason? Would that trigger an investigation of his? If he's otherwise sound, when you talk to him, would those three facts alone be sufficient? Well, you know, I don't think it's just that. It's also that he confessed and could not explain why he had done this. And the defense attorney himself was putting on an imperfect self-defense theory, which means two things. It was unreasonable. Okay, yes, that's unreasonable. That's, you know, shooting somebody for no reason 10 feet away in a brawl in which you're not a participant is unreasonable. There's no question about that. Now, was it honest? Well, we have apparent deception here, and we know that the prosecutor focused on that. And then we also know that once Deshaun Nellam was evaluated, we find out all these things. We find out basically a florid PTSD diagnosis. We find out that his apparent deception was not deception, that he ---- his perception was deeply flawed. And going way ahead to prejudice for a moment, because I think this ties in with this, we had a juror in this case that was very concerned with his dyslexia here. And, you know, actually this came about, as the Court knows, in a note to the judge. The jury had complained that this particular juror was not deliberating properly and was considering dyslexia and asked the Court whether dyslexia was part of the defense case. And then it turns out later on that, you know, the ---- and the juror, the jury was concerned that the juror was, you know, going south, essentially not deliberating correctly. Wasn't there something in the record about the failure of the attorney to follow up the dispute in the testimony between the mother and the attorney, where the attorney said that basically, you know, that Mr. Nellam was fine and didn't have any problems. And he never told him about any of these other issues. And the mother said that she attempted to tell the attorney about all these issues. And the attorney said, well, you're not my son. And she said that she wanted to tell him that he had been a crack baby or something of that kind or had grown up in a crack-infested home. Am I right there? Yes. I mean, there is evidence in the record below and at the motion on the new trial that the mother did attempt to get the attorney to look into these issues. Absolutely. And there were things that were wrong with the attorney in this case. And I think that that's a really important issue as well. This attorney at the new trial motion said that the first time he was aware of dyslexia was at trial, which is extraordinary, because how do we know this? Well, we know that when Deshaun Nellam had confessed, he mentioned dyslexia. Now, that's extraordinary to me, that one fact that would show that the defendant is impaired or possibly impaired was something that, you know, either the attorney had forgotten about or wasn't paying attention. There were other facts that I think were also important here as well. The attorney denied knowing that on the day that the police went to arrest Deshaun Nellam, the attitude of the police which is extraordinary as well. And then, of course, the new trial motion, he was asked, well, what does that have to, you know, what does that have to, he essentially said that he didn't really understand how that had anything to do with Deshaun's state of mind. And of course, what do we find out? A simple evaluation, we would have found out that Deshaun And that the two triggers that were present in that, in that, in that house at the time were there. The pieces of the puzzle, interlocking puzzle, come together. Unfortunately, though, the challenge that you're raising has to do with psychological background, not his general background. You're moving into the general background. That really isn't before us, is it? Well, I think, I think these things do come together. Well, he did have nine conversations with the defendant's mother, I suppose. You'd find out something about general background. I thought earlier that the general background was not included in this particular challenge. Oh, absolutely. Absolutely. It was a decision not to investigate. You say it is included? Absolutely. And it was not investigated. In the request for the certificate of appellability, it specifically states that trial background would subsume the issue of general background. Dr. Hyman, who testified at the new trial motion, took all of these things in account in making his diagnosis. So I believe that it's all part of the same investigatory puzzle. You're over your time. We'll give you a minute or so. Thank you, Your Honor. May it please the Court. I would like to emphasize that, as we stated in our brief reviews under the ADPA, which means that this Court should defer to the State court's factual findings. Now, in answer to Judge Ezra's question, the conflict between the testimony of the attorney and the testimony of the defendant's mother was resolved by the State court in favor of the attorney. So I would answer Judge Ezra's question in that way. The other point I would like to make, basically, as to the deficient performance prong of the Strickland test, is that the State resolved that in favor of the State. Actually, the State court went on that theory, that counsel was not deficient. And as Judge Wallace pointed out, we have a situation here where we have dyslexia. Now, the facts of the case are that this defendant fired one shot from under circumstances that some evidence was across the room, but it was during a sudden, it was what could be arguably a sudden quarrel or a home invasion. But when he fired the other five shots, according to the two witnesses, the defendant was had or the victim clutched a stomach, fell to the floor after the first shot. So the defendant was put in a position where he was firing five shots into a prone or into a victim who was lying on the floor. Now, as was pointed out by the court, dyslexia is a learning disability. It's not the issue here is not whether he reversed his letters. The issue is simply did he perceive or did he have a perception that this man who was lying on the floor was threatening him with imminent harm. And there was simply he never made any statement to that effect, that he never told his attorney that he thought that this defendant was doing that. In fact, he made several different accounts of why he fired the shots, some of which were that he didn't know why he fired the shots, some of which he didn't recall firing the shots. And even in the beginning, he said that he wasn't even there. But he never tested him. So why wouldn't that put, leaving aside the dyslexia and the marijuana use, why wouldn't that put a reasonable attorney on notice that you really ought to look at the background? I mean, he can't explain to his own attorney why he did it. Oh, well, the reason, well, first of all, there are a couple of different explanations. But, I mean, I guess for a reasonable lawyer, you'd have to say something is not right with this defendant. Well, it's the reason is that the defendant is that he has to, is that he looks at from the standpoint of whether there's a reasonable mental state defense, not whether the defendant has an abstract mental problem. Now, what we're talking about here is someone, again, he is going on the floor, firing shots, according to some of the evidence in the record, five shots at the victim while he's lying down. Now, so if the defendant were to tell him, I thought when he was lying on the floor, I thought that he was coming at me, or I thought that something else was happening, then we would have a whole different situation. But there was no evidence that he told the attorney that. And, in fact, if the attorney had even brought that up, we would get to the prejudice argument where if he had testified, I had a flashback, which would be the only way he could testify, because Dr. Hyman could not testify to that effect in the trial. He could testify to that effect in the trial motion, but he couldn't testify to that before the jury. Then the prosecutor would come in and say, well, when you told the police, first you told the police, you scattered, you heard shots firing, then you scattered. Then you told the police, and then you said you don't remember. And then you, I think there were three or four different stories in there. But he would have said, this is like the fourth story that this defendant had given. Now he has a flashback. He never told the police he had a flashback. Well, if you have somebody that just kind of walks up to a stranger on the street and shoots them, the very first thing you do is a psychiatric examination to find out what in the world is going on here. Right. Well, I don't disagree with that, but what we're talking about is... Something similar to that here? He just kind of shoots the guy? No. You had a home invasion. You had a very hectic situation. You had, I thought you had a very, I think as Judge Aronson said in denying, the trial judge said in denying the new trial motion, there was a substantial basis for various different defenses here to the murder charge, some of which were defense against an intruder, sudden quarrel, things of that nature. So it wasn't a situation where the attorney had only one defense. And one thing to look into is a situation where the attorney had another defense, a very substantial defense against the element of malice. Of course, if he shoots somebody that's on the ground five times, the defense kind of goes out the window, doesn't it? Well, but then, again, you have to say that, well, in a sense, that was one of my points here. Permission, sir? Yeah, that's what happened. That's exactly what happened. That's what happened, right. That's why he got convicted. Right. Well, right. Well, right. And that tends to show that if he, that he deliberately fired the shot. But what it, if you don't have a defendant saying that I fired the shot into the five, there's an inference you draw from the firing the shots, firing five shots into a person who's lying down, which is that you intend to kill him. The other inference is that there might be a reason that you perceived something differently from what was really existing there. Well, if you perceive something differently, then you should communicate it to your attorney, and then he can investigate it. But the State court can reasonably conclude that if he didn't transmit anything like that to his attorney, then his attorney would be, could reasonably conclude that there's no mental defense here. And especially when the attorney. I'm not sure it's a mental defense. I think the argument is, I think, well, my view is imperfect self-defense is awfully tough, tough theory to sell at trial. And I think the argument here is he needed something besides his own testimony to bolster it. He needed some psychiatric testimony or something that would bolster his unreasonable but honest belief that he was defending himself. I don't think it's necessarily that there's a mental defense. Could be, of course, but. Well, what I'm saying, Your Honor, is that he never said that I had this, or the defendant never said, I shot him because I thought I needed to defend myself. What he kept saying was, I don't know why I shot him. Well, the defense lawyer decided to defend this case. These are not easy cases to defend. You've got to pick and choose. But he decided, made a decision, you do it on imperfect self-defense. In order to do that, if I understand correctly, it has to be based upon a genuine belief that you need to shoot him for your own self-defense, right? That's right. I just wondered why this particular defense was used. I'm not sure why he used that defense. I'm not sure that's the only defense that we can say was offered here, because there was very clear evidence that there was a sudden quarrel, and the jury, that this was a home intrusion and this was a quarrel. And the jury was instructed on the elements of manslaughter, voluntary manslaughter, and that includes the sudden quarrel defense. But if I understand correctly, the defendant never testified that he was under any apprehension that he needed to use self-defense. That's true. Although there was evidence that he would have to use defense for the or actually he didn't testify to that effect, but there was evidence that the victim was being very physical with people who were in the house. So it could have been for defense of others, not necessarily self-defense, but defense of others. Well, I don't know what other defense he used because I wasn't there, but it just seems to me that a basis of it is missing, that he never testified or there's apparently no evidence in the record that he had a genuine and imminent threat of harm, which would be a key point if you're going to defend on this basis. Well, I would agree as to the first five shots that he had no genuine set of harm, no feeling of no genuine sense of imminent harm. I think that there was the evidence that when we look at the whole spectrum of what was happening at the scene at the time, then we have, then he has that. So the defense would be even though he says I don't know why I did it, the evidence would be that you'd argue, well, he knew why he did it. He just can't remember now. He shot in self-defense. Well, I suppose that could be a defense for the first shot. I'm just wondering whether did it come up at all in the proceedings that were in the other courts, in the State court, whether or not it was less than the best choice to try and get an imperfect self-defense before the jury. Was that raised? I don't recall that it was. But it isn't in the briefs anyway here, but I just wonder why it took place. I don't recall that it was. But the other thing I want to make is the prejudice argument, and I see my time's up. I'll just submit it in my brief on the prejudice issue. Okay. Counsel to the bottom. Your Honors, I would like to return very briefly to the ABA rules, because I believe that that answers a lot of questions about what went wrong in this case, and the commentary specifically to 4-4.1, which is, in many criminal cases, the real issue is not whether the defendant performed the act in question, but whether the defendant had the requisite intent and capacity. And that's really what this case is all about. It goes on further, and this is what I believe needs to be emphasized here. The accused may not be aware of the significance of facts relevant to intent in determining criminal responsibility. And I believe that the State court and the Federal court in ratifying the State court's finding confused the issue. I believe that there was the assumption that Deshaun Nellam, as damaged as he is, was under some kind of obligation to be able to deliver up those necessary facts to show that he did not, you know, have the particular intent in question. And that's the tragedy of this case. And I would submit it on that. Thank you. Thank you, counsel. The case, as heard, will be submitted. Do you want to take a break? Are you okay? Do you want to take a break? I'm fine. Do you want to take a break? We only have, what, two cases left? Maybe three minutes. We'll take, at this point, a five-minute recess. We'll be back to your last two cases on the calendar. All rise. This Court stands at recess for five minutes.
judges: Wallace, Thomas, Ezra